410 So.2d 1070 (1982)
STATE of Louisiana
v.
Raymond BARROW.
No. 81-KA-1426.
Supreme Court of Louisiana.
March 1, 1982.
*1071 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Cliff Strider, Asst. Dist. Attys., for plaintiff-appellee.
Martin E. Regan, Jr., New Orleans, for defendant-appellant.
MELVIN A. SHORTESS, Justice Ad Hoc.[*]
On September 18, 1980, the Orleans Parish District Attorney's Office filed a bill of information against Raymond L. Barrow *1072 (defendant) and Robert Wilson, Jr., charging that on September 7, 1980, they committed a simple burglary of the building located at 818 North Broad Street in New Orleans, owned by Antonio Fuentes, with the intent to commit a theft therein, in violation of La.R.S. 14:62. Barrow and Wilson pled not guilty and jointly filed a motion to suppress identification which was heard and denied. They exercised their right to a jury trial which began on February 10, 1981. A six-person jury found defendant Barrow guilty as charged and found Wilson not guilty. On February 20, 1981, the defendant's motion for a new trial was denied and he was sentenced to serve twelve years in the custody of the Department of Corrections, with credit for time served. The defendant appeals his conviction and makes four arguments from eleven assignments of error.
FACTS
Antonio Fuentes owned a used car lot at 818 North Broad Street in New Orleans. At approximately 10:30 p.m. on September 7, 1980, Fuentes and his wife went to the lot to check the premises. As he pulled into his driveway he saw an unfamiliar car with an open trunk and became suspicious. As he approached his door, he heard noises coming from inside the building so returned to his car to get a gun. He then proceeded to his building, turned off the burglar alarm and unlocked the doors. As he pushed the door open, he turned the light switches on and saw a man whom he subsequently identified as Raymond Barrow approximately ten feet away holding a stereo speaker in one hand and a bag in the other. When the defendant saw Fuentes, he dropped what he was holding and hurriedly exited the building through a hole in a wall which had apparently been made to afford access and by-pass the alarm system. Fuentes went outside to attempt to stop the burglar and fired a couple of shots but the burglar escaped through a hole in the fence which encircled the car lot. Fuentes heard someone screaming words like, "Get out, get out," and noticed Robert Wilson outside the lot near the unfamiliar automobile. Fuentes apprehended Wilson, brought him inside and telephoned the police. The police arrived shortly thereafter and Fuentes gave them a description of the burglar. (Tr. 50-52, 55-61).
Officer Harold Lewis of the New Orleans Police Department was taking Wilson to central lockup when he noticed a man who fit Fuentes' description of the burglar walking near the corner of Broad and Lafayette Streets. Lewis apprehended the man, frisked him, and found some jewelry in his pants pocket. He placed the man in his squad car and returned to the used car lot. Fuentes identified the man, Raymond L. Barrow, as the burglar. Fuentes also identified a watch, pendant, necklace and chain and said the last time he had seen these items they had been in the center drawer of his desk. Officer Lewis had obtained this jewelry when he searched the defendant. Fuentes also identified some stereo components which Officer Lewis had recovered from defendant's pocket. (Tr. 62-67, 171-176, and 178).
Donald Thomas, a State witness, testified that he saw the defendant in his back yard shortly after he heard gunshots on September 7, 1980, and that defendant told him there was a white man shooting at him. Thomas also identified the shirt and pants defendant was wearing that night. (Tr. 146-150).
Defendant took the stand in his own defense and denied committing the burglary. He testified that he knew Fuentes from some illegal drug dealings; that he had sold Fuentes catnip for $400 claiming it was marijuana; that Fuentes swore he would get even with him; that Fuentes had seen him earlier that day and was therefore able to identify his clothing; that the jewelry came from a paper bag which Officer Lewis took from Robert Wilson, a man he did not know. (Tr. 226-232).
Robert Wilson testified that he did not know defendant and that he was at the scene of the crime because he had mechanical problems with his car. (Tr. 259-261).
Argument No. 1 (Assignments of Error Nos. 3 and 4)
Defendant argues that the trial court erred in denying him an opportunity to *1073 fully examine a State witness. During the Fuentes cross-examination, defense counsel asked about any previous conversations or dealings he might have had with Donald Thomas. Fuentes testified that the first time he had ever seen Thomas was when they met in court for this trial; that he had spoken to Thomas on the telephone about the subpoenas they had both received in connection with this matter; that he and Thomas did not discuss the facts of the case or what happened on the night in question. (Tr. 106-109). When counsel attempted to question Fuentes about a second conversation he had with Thomas, an objection of irrelevancy was sustained by the trial court. The defense now submits that this ruling prevented a full cross-examination of the witnesses against him in violation of his rights as guaranteed by La.R.S. 15:485, and by Article 1, Section 16, of the Louisiana Constitution of 1974.
The record clearly shows that the defense cross-examined Fuentes at length and in great detail about his relationship with Donald Thomas. Fuentes stated again and again that he and Thomas only saw each other casually in court; that they had never discussed what happened on the night of the burglary or any other matter related to the present proceedings. Thomas' testimony fully corroborated Fuentes' assertions in this regard. Thomas testified he did not know Fuentes until he saw him at the courthouse; that he previously spoke to Fuentes on only one occasion and that was when he got a subpoena to appear in court. (Tr. 150).
Much discretion is vested to the trial judge on questions of relevancy of evidence. His rulings will not be reversed in the absence of a clear showing of abuse of discretion. [State v. Walker, 344 So.2d 990 (La.1977)]. Defense counsel is correct in his assertion that he has the right to cross-examine and impeach witnesses sworn by the State, but he does not even allege how this continued line of questioning would have impeached Fuentes. Even if it is assumed that a proper foundation was laid for impeachment, same could have been properly excluded as impeachment on a collateral fact. La.R.S. 15:494; State v. Monroe, 397 So.2d 1258 (La.1981).
These assignments lack merit.
Argument No. 2 (Assignments of Error Nos. 6 and 11)
The defense argues that the trial court erred in denying his motion to voir dire a member of the jury who indicated during trial that he was worried about continuing to sit on the jury. Freddie Dowen was duly empaneled by the State and the defense and sworn as a juror in this case. After several days of testimony, during a short recess before closing arguments, Francis Hirstius, the minute clerk, reported to the trial judge in the presence of opposing counsel, that Dowen had approached him concerning a problem he had. The trial judge thereupon conducted a hearing in chambers in the presence of counsel and put Hirstius under oath. The pertinent portions of this chambers hearing are quoted as follows:
BY THE COURT:
You told me that one of the jurors confronted you as they were leaving to take the last recess and made a statement to you. Will you tell us what that statement is, what his statement was?
BY THE MINUTE CLERK:
He said that he lives in the neighborhood of the alleged offense, and he gets off the bus every afternoon at Orleans and Prieur in that area and sees what goes on in that area concerning dope and that if he had known that the trial was going to concern the area he lives in that he would have asked to be excused. He said it's worried him ever since yesterday when it was first brought up about the dope deal between Fuentes and Barrow.
BY THE COURT:
Did he make any statement that he could not render a fair and impartial verdict according to the law and the evidence?
BY THE MINUTE CLERK:

*1074 He said it was worrying him, and it's been constantly on his mind and when he got to that point I told him not to discuss it in front of the rest of the jury. He did say he was worrying and kind of like grabbed his chest. I don't know what that means, whether he's trying to infer if he knew before the trial it concerned that area he would have asked to be excused.
(Tr. 306-307).
The matter was discussed on the record in chambers, and out of an abundance of caution, the trial judge recessed the trial until the following morning so all sides could research the issue further. The following morning defense counsel requested that Dowen be voir dired outside the presence of the other jurors to determine whether he could render a fair and impartial decision. The Assistant District Attorney indicated he had no objection so long as the voir dire was limited to whether or not Dowen would follow the law as to any observation which he may have. The trial judge denied the motion to voir dire and indicated that he felt the jurors could follow his instructions and render a fair and impartial verdict. After the jury brought in a verdict of guilty as charged as to defendant, and not guilty as to Wilson, the court polled the jurors at defendant's request. When Freddie Dowen was asked, "Is that your verdict," the following dialogue took place between him and the trial judge:
BY THE COURT:
Mr. Dowen (Freddie Dowen), is that your verdict?
BY THE JUROR:
Is this a yes or no? I've been trying to get something out, but nobody...
BY THE COURT:
The foreman handed me this verdict. Is that your verdict or not?
BY THE JUROR:
I said, "Yes," but I didn't write it down.
BY THE COURT:
Is it your verdict or not?
BY THE JUROR:
Just in talking I said it, but I didn't write it down.
(Tr. 354).
Defense counsel renewed his motion to have the court conduct a voir dire, but the trial judge denied the motion. Counsel has candidly told this court that a motion for mistrial[1] was not made because he was uncertain if there was any grounds for same, not knowing what Dowen's problem was and not being afforded an opportunity to conduct the voir dire. Defendant concedes that there could be no mandatory grounds for a mistrial without some disclosure on the record by Dowen of his incompetence. While the better procedure may have been to conduct a voir dire outside of the presence of the jury to ascertain the juror's problem first hand, we are not prepared to find under the facts presented here that the trial judge abused his discretion in failing to do so. He had the sworn statement from his minute clerk that Dowen's problem concerned the fact that he lived near the burglary site and had to travel the area almost daily. The trial judge, mindful of the absolute requirement that the jury remain completely inviolate and untainted throughout the trial, was obviously of the opinion that chances for mistrial would increase had Dowen been voir dired. Had peremptory reasons for Dowen's removal been present, counsel certainly could have presented same in his motion for new trial *1075 after having had the opportunity to depose Dowen.[2] The record today is as questionable as it was then, which lends support to the trial judge's opinion that Dowen's only problem was the proximity of his home to the scene of the crime. These assignments are without merit.
Argument No. 3 (Assignment of Error No. 7)
Defendant argues that the trial judge erred in overruling his objection to improper personal opinion by the Assistant District Attorney during closing argument. Defense counsel in his closing argument mentioned the State's failure to produce the burglar's fingerprints. On rebuttal, the prosecutor made a statement to the effect that he had handled over 500 cases in the past year and only had five cases where prints had been made.
A resort to personal experience goes beyond the proper scope of argument. C.Cr.P. Art. 774. We have held, however, that before a case will be reversed on the grounds of improper argument, we must be convinced that the remarks influenced the jury and contributed to the verdict. State v. Carthan, 377 So.2d 308 (La.1979). Here, the facts the jury could consider included Fuentes' eye witness identification of the defendant, Officer Lewis' discovery of items taken in the burglary in defendant's pockets, and the corroborating testimony of Donald Thomas placing defendant in his back yard adjacent to Fuentes' car lot at the time in question. It does not appear likely that a reasonable jury would have been swayed one way or the other by the debate over the fingerprint evidence. This assignment is without merit.
Argument No. 4 (Assignment of Error No. 10)
This argument also takes issue with portions of the State's closing argument which are alleged to be highly prejudicial and improper. Defendant complained of the following comments by the prosecutor during closing argument:
The State of Louisiana says it's against the law. There's a reason for it. It could have very well happened that reason took place that night, but Mr. Fuentes decided not to shoot Mr. Barrow. I don't know why. I'm glad he didn't. But that is why we have the crime of burglary. Next time this happens maybe Mr. Barrow will bring his gun in and the victim would be shot. That's why it's against the law.
BY MR. REGAN:
Objection. Mr. Barrow bringing a gun in the next time, Your Honor? That is improper argument.
BY THE COURT:
Complete your case.
BY MR. REGAN:
Well, it's improper argument at this point, Your Honor. He's trying to inflame the jury with the possibility of "next time," and the possibility of this man carrying a gun. There's no "next time." It's far beyond the scope of any summation.
BY THE COURT:
Objection overruled.
BY MR. REGAN:
Please note my objection.
(Tr. 352-353).
A prosecutor's predictions as to the consequences of a not guilty verdict, or the societal costs of such a result, are clearly improper and should be avoided. C.Cr.P. Art. 774, State v. Hayes, 364 So.2d 923 (La.1978); State v. Kaufman, 304 So.2d 300 (La.1974). Notwithstanding this improper argument, as previously discussed in Argument No. 3 above, the State's overwhelming evidence of defendant's guilt made it unlikely that these comments influenced the jury or contributed to its verdict. State v. Carthan, supra. This assignment of error is without merit.
For the foregoing reasons, the verdict and sentence are affirmed.
AFFIRMED.
DENNIS, J., concurs with reasons.
*1076 DENNIS, Justice, concurring.
I respectfully concur, disagreeing only with the treatment of the harmless error issues. As appellate judges, our focus should be on whether there is a reasonable possibility the error contributed to the conviction, not whether we think the evidence is overwhelming or whether we as jurors would have voted to convict. La.Const. art. 5, § 5; La.C.Cr.P. art. 921. See State v. Gibson, 391 So.2d 421 (La.1980).
NOTES
[*] Judges Melvin A. Shortess, Burrell J. Carter, and Felix H. Savoie, Jr., of the First Circuit Court of Appeal participated in this decision as associate justices ad hoc, joined by Chief Justice Dixon and Associate Justices Calogero, Marcus and Dennis.
[1] "A mistrial may be ordered, and in a jury case the jury dismissed, when:

(1) The defendant consents thereto;
(2) The jury is unable to agree upon a verdict;
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
(4) The court finds that the defendant does not have the mental capacity to proceed;
(5) It is physically impossible to proceed with the trial in conformity with law; or
(6) False statements of a juror on voir dire prevent a fair trial.
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771." C.Cr.P. Art. 775.
[2] C.Cr.P. Art. 851; C.Cr.P. Art. 855.