445 So.2d 521 (1984)
STATE of Louisiana, Plaintiff-Appellee,
v.
Isaac SMITH, Defendant-Appellant.
No. CR 83-594.
Court of Appeal of Louisiana, Third Circuit.
February 1, 1984.
Rehearing Denied February 29, 1984.
Writ Denied April 23, 1984.
*522 Dee D. Drell, Gold, Little, Simon, Weems & Bruser, Alexandria, for defendant-appellant.
Edward E. Roberts, Asst. Dist. Atty., Alexandria, for plaintiff-appellee.
Before FORET, YELVERTON and KNOLL, JJ.
YELVERTON, Judge.
The defendant, Isaac Smith, was convicted of second degree murder, a violation of LSA-R.S. 14:30.1. He was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
Defendant appeals the conviction. He assigns five errors. The first assignment, which attacks the constitutionality of the non-unanimous verdict (11-1), was raised for the first time in the appellant's brief. It was not raised in the trial court and, therefore, has not been properly preserved for appellate review, State v. Zeno, 322 So.2d 136 (La.1975), and will not be considered.
Of the remaining four assignments three involve the sufficiency of evidence and the other assigns reversible prejudice to the prosecutor's improper closing arguments.
We affirm the conviction. We will discuss the lack of merit of the assignments of error after first narrating the basic facts as they appear in the record.
FACTS
The shooting for which the defendant was convicted of second degree murder took place between 9:00 and 10:00 o'clock P.M. on July 24, 1981, at 2260-B Sycamore in the Karst Park public housing project in Alexandria, Louisiana. The defendant, Isaac Smith, and the victim, Judy Williams, had been living together for about two years at this address.
On the night of the victim's death defendant and three male companions were inside the home drinking beer and listening to the radio. The victim was outside in the back yard talking to two juveniles and smoking. There was some testimony she was smoking Kool cigarettes; one witness stated that the victim and one of the juveniles were smoking marijuana. From time to time the victim entered the house and asked her husband and his friends if they needed anything. Each time she then returned outside through the back door.
Some time between 9:00 and 10:00 o'clock P.M. defendant got up and went outside where Judy was. At this time the victim was talking to the two juveniles in a field from 60 to 100 feet behind the house. Defendant walked up to the victim and said something to her, then both of them began walking back toward the house. This is when the shooting occurred.
She was killed by a .22 caliber bullet which entered the left side of her forehead from a weapon fired from two to six inches *523 away. The weapon disappeared after the shooting.
Defendant testified. He said that the shooting was either an accident or a suicide because the victim killed herself with her own gun. He said she had been talking suicide and was preparing to leave him because of the attentions he had been paying to another woman. According to defendant, when he approached her in the field that night she was crying and he asked her to come inside; she then produced the weapon in her left hand and started scratching her head with the barrel. He attempted to get the gun away from her and it went off.
The two juveniles with the victim at the time of the shooting testified that the defendant walked up to her and told her to come inside, whereupon she responded, "For what? I haven't done nothing." These witnesses stated that as the two adults began to walk toward the house, the defendant pulled a gun and shot her in the head. On cross-examination the witness Cleophas Peterson admitted that he never actually saw a gun; he saw defendant's hand move from behind him and saw the flash. The other juvenile, Amelia Green, could describe the gun only as a little, black pistol; she admitted that she did not see the gun well because of the darkness, and that she did not see where the gun came from. However, she repeatedly testified that the gun was in defendant's possession and that he shot the victim with it.
The victim fell down at the place where she was shot and died there. Defendant walked back to his house. Later he backed his car near the body intending to take the victim to the hospital, but he was dissuaded by some persons in the gathering crowd. He then went inside the house, changed trousers from short pants to blue jeans, then drove to his grandmother's house on a road outside Alexandria.
A police officer who was among the first on the scene noted that the victim was lying in the grass clutching a crumpled cigarette pack in her left hand. At about the same time the ambulance and a paramedic arrived. The victim's pulse was checked at her neck and it was found that she was dead. A coroner's investigator directed that the body be placed in a body bag and taken to the morgue. None of these persons saw anyone wash the hands of the victim. Gunshot residue samples were taken from the victim's hands in the morgue and analyzed. The analysis showed no trace of gunshot residue.
The defendant was later apprehended at his grandmother's house. He testified he called the sheriff's office from there, identified himself and gave his grandmother's address. The dispatcher on duty neither remembered nor had a record of such a call. The deputies who brought the defendant in said they found him because they were looking for him and not because they were directed to his location.
Gunshot residue samples were likewise taken from defendant's hands and analyzed, with negative results. Defendant testified he did not wash his hands that night.
As stated earlier, the bullet removed from the victim's head was a .22 caliber and all witnesses, including defendant, stated the weapon was a pistol. Defendant testified that Judy had a pistol and that a day or two before the shooting at a time while she was temporarily absent from the house, he found it and took it to his car where he hid and locked it in the trunk. At no time earlier during the evening before the shooting was either the victim or the defendant seen to be in possession of a weapon. The victim stood in the backyard for ten to twenty minutes talking with the two juveniles and, briefly, with a third person who passed by. None of these three saw the victim in possession of a gun. The victim was wearing a sun dress with no pockets and she was not carrying a purse. She was holding a package of cigarettes and a lighter and, according to one witness, she was holding a small towel to her jaw to comfort a toothache.
The three men in the house with the defendant testified for the defendant. The three persons who conversed with the victim *524 outside before the shooting testified for the State. None of these six witnesses noticed anything unusual about the victim's behavior. She was not crying. She did not appear upset. Only defendant testified that she was distraught and talking suicide.
We will now examine the assignments of error.
Assignments of Error Nos. 2, 3 and 5
The defendant asserts that the testimony used to convict him was not credible, and that also there was an insufficiency of evidence to support a finding of guilt. For these underlying reasons the defendant asserts that the trial court erred in denying his post verdict motion for acquittal and alternatively for a new trial.
The State's proof that the defendant committed the crime of second degree murder rests largely upon the testimony of the two eyewitnesses to the shooting, Cleophas Peterson and Amelia Green. Peterson was fifteen and Green was sixteen at the time of the shooting. They testified in essence that they saw the defendant pull a gun and shoot the victim. Peterson also stated that before the shooting he had been standing there with the victim smoking Kool cigarettes. This testimony was contradicted at trial in the following respects: the defendant stated that he did not pull a gun and did not shoot the victim; he testified that she shot herself. Cynthia Peterson testified that Cleophas Peterson and the victim were in fact smoking marijuana.
The testimony of one of the eyewitnesses was also attacked on cross-examination. At that time, Cleophas Peterson admitted that at the time of the shooting it was dark, that he could not see the gun coming out of the defendant's pocket, and that he had assumed that the defendant shot the victim since he saw the defendant's right hand move from behind him and then saw the flash from a gun. Thus, the credibility of one of the eyewitnesses for the State was assailed by contradictory testimony.
It is well-settled that whenever there is conflicting testimony as to factual matters, the question of credibility of witnesses is within the sound discretion of the trier of fact; such factual determinations will not be disturbed on review unless clearly contrary to the evidence. State v. Klar, 400 So.2d 610 (La.1981); State v. Coleman, 432 So.2d 323 (La.App.1st Cir. 1983); State v. Walker, 432 So.2d 1057 (La.App.3rd Cir.1983).
The instant case may be analogized to State v. Walker, supra. In that case, only the defendant's testimony negated the fact that he was the perpetrator. The Court held that there was no abuse of discretion in the trier of fact assigning greater credibility to witnesses other than the defendant, who testified in a self-serving manner. Similarly, in the instant case, there appears to be no abuse of discretion in the jury's assigning greater weight to the testimony of the two eyewitnesses' version of the facts rather than the defendant's.
The standard of review of sufficiency of the evidence is whether a rational trier of fact, accepting the facts in a light most favorable to the prosecution, could have found the defendant guilty of the crime charged beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Fuller, 414 So.2d 306 (La.1982).
In the instant case, the evidence, when viewed in a light most favorable to the prosecution, shows that Cleophas Peterson and Amelia Green saw the defendant with a gun in his hand shoot the victim in the head. The defendant's claim that the victim was holding the weapon in her left hand and committed suicide is rebutted by the fact that the corpse was found to have a crumpled cigarette pack in the left hand. Moreover, at the time of her death the victim reportedly did not have a gun, and had a dress on without pockets or a waistband in which to conceal a gun, and she was not carrying a purse. Thus, there was both direct and circumstantial evidence showing that the defendant committed the *525 crime, and that the victim did not commit suicide.
The only direct evidence contradicting the eyewitness version of the facts was that of the defendant himself, who insisted that the victim had committed suicide. The jury obviously chose not to believe the defendant's version of the incident. It is well-settled that a jury's choice not to believe a defendant should not be upset by an appellate court on the basis that the conflicting version constituted insufficient evidence. State v. Tompkins, 403 So.2d 644 (La.1981); State v. Walker, supra.
These assignments of error are without merit.
Assignment of Error No. 4
The defendant asserts that the trial court erred in failing to grant a mistrial because of prejudicial remarks during closing argument by the district attorney implying that should the jury set the defendant free, it would be setting him free to "kill again."
The following excerpt from the record contains the remarks to which objection was made:

REBUTTAL ARGUMENT ON BEHALF OF THE STATE
BY MR. ROBERTS:
I'll be very short.
There are several points made by the defense that I would like to take issue with, and let me begin with the last point he made to you, where he reiterated a story, a tale, a story from his experience in defending people charged with crimes, and you remember it, he just told it to you. Two eye witnesses recanted their story and the man was set free.
I can tell you stories too. He doesn't want me to tell you a story, but I can tell you stories of having tried people for murder, and having a jury set them free, and having them commit murder again. But I'm not going to inflame you with those type of stories.
BY MR. DRELL: Note my objection to that comment, Your Honor.
BY THE COURT: Let it be noted.
The defendant timely moved for a mistrial and argues that a mistrial was improperly denied. He relies on La.C.Cr.P. art. 770 which reads in relevant part:
"Art. 770. Prejudicial remarks; basis of mistrial
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
. . . . .
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
. . ."
The instant case does not fall within the prohibition of Article 770(2). The purpose of paragraph (2) of that article is to prohibit reference to other crimes already committed. Here, the prosecutor referred vaguely to the possibility defendant might commit some future crime.
Defendant's assignment is governed by C.Cr.P. art. 774:
Art. 774. Argument; scope
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
Under this article, a resort to personal experience goes beyond the proper scope of argument. State v. Barrow, 410 So.2d 1070 (La.1982). Also, a prosecutor's predictions as to the consequences of a not guilty verdict, or the societal costs of such a result, are clearly improper and should be avoided. State v. Barrow, supra. However, such remarks do not necessarily require reversal.
*526 Before a case will be reversed on the ground of improper argument, the reviewing court must be thoroughly convinced that the remarks influenced the jury and contributed to the verdict. State v. Barrow, supra. State v. Morris, 404 So.2d 1186 (La.1981).
We note in the instant case that the trial court's charges to the jury not once but twice emphasized that the arguments of counsel were not to be considered as evidence. Moreover, if the remarks can be construed as a resort to personal experience or a prediction of the consequences of the verdict, they were made only to refute like assertions made by defendant's counsel in his argument. The State on rebuttal had the right to answer the argument of the defendant. C.Cr.P. art. 774. State v. Winn, 412 So.2d 1337 (La.1982). It has been held that if the defense initially makes an assertion in closing arguments not supported by the trial testimony, the State has the right to go outside the record to refute it in rebuttal. State v. Morris, supra. In the instant case the defense counsel had just ended his argument by relating a story about an innocent person who was almost convicted. The State was entitled to rebut the argument in some manner. The State chose to rebut by telling the jury that if defense counsel knew of cases where the innocent had been exposed to conviction, the State knew of cases where murderers had been freed to kill again.
Under the circumstances of this case we do not believe that the remarks were improper. Even if they were, however, we think it unlikely that the remarks influenced the jury or contributed to its verdict.
This assignment is without merit.
For the foregoing reasons, we affirm the defendant's conviction and sentence.
AFFIRMED.