DOUCET, Judge.
Defendant, Warren Joseph Lewis, was convicted of second-degree murder, a violation of La.R.S. 14:30.1, and given the mandatory sentence of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Defendant appealed. This court conditionally affirmed the conviction, but ordered the trial court to conduct an in camera inspection of statements of witnesses who did not testify at defendant's trial. State v. Lewis, 560 So.2d 700 (La.App. 3rd Cir.1990). After reviewing these statements, the trial court was to decide whether a new trial should be granted. The trial court has now denied the motion for a new trial, finding that the statements contained no exculpatory evidence which was material to defendant’s guilt or innocence. The case is back before us. Defendant, pursuant to his right to appeal any adverse ruling, now challenges the trial court’s findings and refusal to grant a new trial.
On June 18, 1988, the defendant, Warren Joseph Lewis, was involved in a fight at Rosie’s Bar in Lafayette, Louisiana, which resulted in the stabbing death of Donald Boudreaux. According to Noel Batiste, Jr., the Manager of Rosie’s Bar, the defendant arrived at the bar between 3:30 and 4:00 o’clock that afternoon. Also working at Rosie’s that day was Ms. Sable Jolivette, the bartender. Batiste was the only person in the bar who knew the defendant and had seen him before.
James Sylvester is a regular patron of Rosie’s Bar and has been ever since the establishment was opened. Sylvester testified that he arrived at the bar between 7:30 p.m. and 8:00 p.m. on the date in question. He testified that the defendant was already there when he arrived, and that the two spoke briefly while seated at the bar. The victim, Donald Boudreaux, came into the bar and asked Sylvester how he was doing. Boudreaux ordered a half-pint of whiskey from the bartender and had paid for it when Sylvester, who was seated nearby, heard the defendant say to Boudreaux, “You stepped on my feet.”
Boudreaux replied, “If I stepped on your foot, I’m sorry.” The defendant then said, “I should cut you.” The victim replied, “If you want to cut me, go ahead on.” Sylvester testified that he also heard Boudreaux say that he didn’t want any trouble. At that point, the defendant pulled a knife with a large blade from his right pocket. Boudreaux again said that he wanted no trouble and attempted to leave the bar. Sylvester testified that the defendant blocked the door to prevent Boudreaux from leaving, and then began stabbing him repeatedly. The two men fell to the floor and began rolling. Boudreaux managed to get up and leave the bar, but fell down outside. It was established at trial that Donald Boudreaux was stabbed twelve times, and died due to excessive bleeding when the knife severed the femoral artery in his thigh.
Sylvester testified that he never saw a knife in Boudreaux’s hand at any time, and that Boudreaux never tried to attack the defendant. He also said that the defendant dropped the knife on the floor of the bar after he had stabbed the victim, but later picked the knife back up. Sylvester did not know the defendant, but had known Bou-dreaux for approximately four years.
Rodney Jolivette, a patron of Rosie’s since its opening, was also at the bar when the fight occurred, and gave his account at trial. Jolivette heard the defendant and the victim talking, but could not understand what was being said. He did hear Boudreaux say, “I’m scared,” followed by a “click.” Jolivette turned around and saw a knife with a large blade in the defendant's right hand. He said that Boudreaux “made a break for the door,” but “couldn’t open it fast enough.” The defendant stabbed the victim repeatedly and the two men fell to the floor. Jolivette couldn’t see which man was on top of which, however, because he was backing away from the fight. He testified that when the fight was over, Boudreaux tried to leave the bar, but *255 fell down by the door and was assisted outside by a man called “June.”
At trial Sable Jolivette gave her account of the incident as well. Sable Jolivette testified that she was working behind the bar on the night in question, and had served defendant two beers. She did not see the two men speak, but saw Boudreaux walking towards the door afterwards. Sable Jolivette said that she screamed at the men to stop fighting, but could not see who was fighting. She also pointed out that after the fight the defendant sat on a bar stool and waited for police to arrive.
Noel Batiste, the Manager of Rosie’s Bar, also testified at trial. Batiste was outside the bar when the fight started, but heard the commotion and went to investigate. When he opened the door, Bou-dreaux came outside, bleeding, and asked Batiste to take him to the hospital. Batiste called an ambulance. He observed knife wounds on Boudreaux’s stomach, noting that his intestines began protruding while waiting for the ambulance to arrive. Batiste went back inside and told the defendant that he would have to remain in the bar. Defendant replied, “I ain’t going nowhere,” and “The man messed with me, I put it on him.” Boudreaux later died of his wounds.
Batiste said the defendant had been drinking, but was not so drunk that he didn’t know what he was doing. He also testified that while waiting for police and the ambulance to arrive, he saw the defendant go to the door of the bar and throw the knife outside, under the neon sign in front of the bar. Batiste said that he made sure that the knife was not touched until he saw police pick it up.
Donald Caesar of the Lafayette Police Department testified that he arrived at Rosie’s Bar in response to a disturbance call. On arrival, he saw the victim on the ground bleeding. Sable Jolivette pointed out the defendant as the man who had stabbed Boudreaux. Officer Caesar found the defendant sitting on a bar stool. The defendant had blood on his shirt and a pool of blood beneath him. The officer saw no wounds on the defendant. The defendant was read his rights and placed under arrest. He cooperated with officers until he was in the police unit, when he began kicking the door violently and cursing. Officer Caesar testified that the defendant threatened him, saying that he would kill him if he saw him on the street. Officer Caesar also noted that the defendant walked to the police unit under his own power and answered questions.
ASSIGNMENT OF ERROR:
The defendant attempts to reurge many of the assignments which were disposed of by this court in his initial appeal. Lewis, supra. These arguments will not be considered. Defendant’s right of appeal now extends only to the trial court’s refusal to order a new trial, as all other assignments have previously been ruled upon. The sole issue of this appeal is whether the trial court erred in refusing to order a new trial after conducting an in camera inspection of statements of witnesses who did not testify at defendant’s trial. We find no error in the trial court’s ruling.
“La.C.Cr.P. art. 851(3) reads as follows:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the ease the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
* * * * * *
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial would probably have changed the verdict or judgment of guilty;”
The test in determining whether a motion for new trial based on newly discovered evidence should be granted is whether the new evidence is so material that it ought to produce a different result from the verdict rendered at trial. State v. Chapman, 410 So.2d 689 (La.1981), appeal after remand, 436 So.2d 451 (La.1983). See also, State v. *256 Bagley, 378 So.2d 1356 (La.1979); State v. Williams, 362 So.2d 530 (La.1978). Moreover, in deciding a motion for a new trial based on newly discovered evidence, the trial judge is accorded considerable discretion in evaluating the potential impact of the testimony upon the verdict, if it had been offered at trial, and its reliability. His ruling will not be disturbed on appeal in the absence of a clear showing of an abuse of discretion. State v. Robinson, 337 So.2d 1168 (La.1976); State v. Porter, 330 So.2d 281 (La.1976).
After conducting an in camera inspection of statements of five witnesses who did not testify at trial, the trial court concluded that a new trial was not mandated. The non-disclosed statements contained the following evidence which may be considered exculpatory:
1. One witness stated that he did not see when the fight started but saw the victim standing over defendant while defendant was on his back. He further stated that defendant was drunk.
2. Another witness stated that defendant was “pretty loaded”. He also stated that he bumped the victim and was nicked above the knuckle, suggesting the possibility that the victim may have had a knife.
3. A third witness stated that defendant was drunk and fell from a bar stool to the floor.
4. Finally, another witness stated that he did not see the start of the fight, but saw the victim on top of defendant when the two men were on the floor.
In so concluding, the trial judge noted that the statements contained evidence which was merely cumulative of that which had been presented at trial concerning the affirmative defense of intoxication. See State v. Landry, 381 So.2d 462 (La.1980). As to defendant’s other asserted defense— self-defense — the trial court found that although there was some evidence within the non-disclosed statements which might be considered exculpatory, the totality of the evidence presented at trial against defendant was overwhelming, rendering minimal any prejudice which may have resulted from non-disclosure. See State v. Ray, 423 So.2d 1116 (La.1982).
The trial court did not abuse its considerable discretion afforded it in refusing to order a new trial. The evidence against defendant at trial was indeed overwhelming. Any evidence that the victim was on top of defendant during the fight or may have had a knife was negated by eyewitness testimony at trial that defendant pulled a knife and began stabbing the victim before the two men fell to the floor. Also extremely damaging to defendant’s self-defense theory is the fact that he stabbed the victim twelve times, and was not himself significantly injured. Moreover, the trial court’s finding is correct that evidence of intoxication contained in the non-disclosed statements was merely cumulative of that presented at trial. Defendant had in fact been drinking, but was able to walk under his own power and answer questions. There was nothing in the non-disclosed statements to contradict this assertion.
The written statements may have contained exculpatory evidence, but their evidence was immaterial as to the defendant’s guilt and did not prejudice the defendant by its non-disclosure. The trial court properly refused to order a new trial.
The conviction and sentence is affirmed.
AFFIRMED.