590 So.2d 755 (1991)
STATE of Louisiana, Plaintiff-Appellee,
v.
Arthur Wayne CASTILLE, Defendant-Appellant.
No. Cr 91-193.
Court of Appeal of Louisiana, Third Circuit.
November 13, 1991.
*756 G. Paul Marx, Lafayette, for defendant-appellant.
Michael Harson, Asst. Dist. Atty., Lafayette, for plaintiff-appellee.
Before FORET, LABORDE, and KING, JJ.
KING, Judge.
This appeal presents the issues of whether there were procedural errors committed during closing arguments in the trial; whether it was reversible error to deny defendant's Motion to Suppress his confession; whether there was sufficient evidence to convict defendant of specific intent to commit second degree murder; and whether the State rebutted the defense of drug intoxication at the time of commission of the murder.
On July 7, 1989, Arthur W. Castille (hereinafter defendant) was arrested for the second degree murder of Margie Martin, a violation of La.R.S. 14:30:1. On July 13, 1989, defendant was charged by grand jury indictment with this crime. After a trial, a twelve person jury found defendant guilty as charged. Defendant was sentenced to serve a term of life imprisonment at hard labor, without benefit of probation, parole, or suspension of sentence. Defendant timely appeals citing four assignments of error. We affirm.

FACTS
On July 7, 1989, defendant was arrested for the second degree murder of Margie Martin, a violation of La.R.S. 14:30.1. The events leading up to his arrest appear from evidence in the record. On June 28, 1989, *757 Ms. Louann Albarado, a friend of Margie Martin (hereinafter the victim), was unsuccessful in her attempts to contact the victim. She learned that the victim's telephone had been disconnected. Since she was a close friend and had last seen the victim on June 23rd, she became concerned and contacted the victim's landlord and the police.
Officer Robert Guilbeaux of the Lafayette City Police Department was dispatched to the victim's apartment. Upon arriving, he noticed no signs of forced entry. There was no answer at the door and all of the doors were locked. The officer obtained permission from the landlord to enter the apartment. Upon entering, he found the victim lying on the floor and a clothes iron lying next to the body. He secured the scene and then requested an investigation of the death. Detective Fowler, an expert in the field of fingerprint comparison, testified that fingerprints were lifted from the victim's telephone in her apartment that matched those of defendant.
Dr. Karuna Kubreja, a forensic pathologist, testified by a video deposition that the victim had five incised wounds and five stab wounds in the frontal neck region. The cause of death was the result of one of the stab wounds in the neck perforating a major artery, producing an excessive amount of bleeding. Dr. Kubreja testified that the neck wounds were inflicted by a clothes iron due to their triangular shape.
Mr. Roger Pinac, a former investigator with the Lafayette City Police Department, testified that on June 28, 1989, he knocked on the door of the defendant, who was a next door neighbor of the victim, but he was not home. Pinac later learned that defendant had gone to pick up his wife at City Court, which is across the street from the police station, and sent him a message he was being sought. When defendant learned he was being sought, he went to speak with the police. Mr. Pinac spoke with defendant and defendant said he did not know the victim, had only exchanged greetings with her, and had never been inside her apartment. As the investigation proceeded, the police decided to question defendant further. On July 7, 1989, defendant was asked to come to the police station for another interview.
When defendant arrived at the police station, he was advised of his legal rights and signed a waiver of rights form. During the interview, defendant told the officer he had taken no illegal drugs within the past twelve hours but that he had been taking Lortab, a pain medication for his knee. Defendant gave the officer no indication of being intoxicated or under the influence of any drugs or alcohol at the time of his questioning and the giving of his statement. The officer found defendant to be coherent and lucid. Defendant then gave a videotaped statement which was not introduced into evidence. In this interview, defendant reiterated his previous oral statement that he did not know the victim, Margie Martin. When defendant was told that the police had lifted his fingerprint from the victim's telephone in her apartment, the defendant requested they move to another room.
After moving to a more private location, defendant confessed that he had lied about never going into the victim's apartment. He stated that the victim invited him into her apartment on June 28, 1989 to talk. She offered to make tea and went into the kitchen. Defendant followed her and they talked in the kitchen. For some unknown reason, defendant did not elaborate on, he then became angry and struck her with an iron.
At this time, the officer requested that defendant make a taped statement so that there would be a record of his version of what had happened. Defendant then gave an audio taped statement very similar to his earlier oral statement. Before each of the statements made by defendant, he was fully advised of his legal rights and waived them. Defendant never requested an attorney.
On July 13, 1989, defendant was charged by grand jury indictment with second degree murder of Margie Martin, a violation of La.R.S. 14:30.1. On August 4, 1989, defendant was formally arraigned and entered a plea of not guilty. A jury was *758 selected and trial was held on November 15 and 16, 1990. On November 16, 1990, the jury found defendant guilty as charged. On November 29, 1990, defendant was sentenced to life imprisonment without benefit of probation, parole, or suspension of sentence.
Defendant timely appeals urging four assignments of error:
(1) The trial court erred in failing to restrict the prosecution from making arguments in its rebuttal closing argument which were confined to answering the closing arguments of the defense; and
(2) The trial court erred in failing to suppress his confession and in relying upon La.R.S. 15:432 for a presumption of sanity which it allowed to relieve the State of its burden of proof on the voluntariness of this confession; and
(3) The jury's verdict is in error because the record provides no evidence of specific intent by the accused; and
(4) The verdict cannot be sustained because the State did not rebut the defense of drug intoxication nor present any evidence to attempt to rebut said defense.

ASSIGNMENT OF ERROR NUMBER 1
Defendant alleges that the trial court erred in failing to restrict and limit the prosecution's rebuttal closing argument to argument confined to answering the defendant's closing arguments. He contends that the State went beyond the scope of rebuttal when the prosecutor began to discuss the testimony of Dr. Clifton W. Shepard, Jr. who had performed surgery on defendant's knee on June 15, 1989. Dr. Shepard testified at trial that, at the time of surgery on defendant's knee, defendant was placed on Lortab, a pain medication with a strength similar to Tylenol Number 3 or Number 4. Dr. Shepard stated he saw defendant four or five days later and defendant was doing well. When Dr. Shepard next saw defendant, on July 5, 1989, defendant complained of a lot of pain. Dr. Shepard indicated he was not sure as to why defendant was in so much pain. Dr. Shepard also testified that he wrote a letter to the worker's compensation insurer indicating that he felt defendant had a drug abuse problem.
La.C.Cr.P. Art. 774 provides:
"The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant."
On rebuttal, the prosecutor argued that "perhaps on the date that this homicide took place that the defendant perhaps injured his knee again." Defense counsel objected and claimed this remark was outside the scope of permissible rebuttal. However, the State's remarks could be construed to have been made to refute assertions made by defendant counsel in his closing argument. On rebuttal, the State has the right to answer the defendant's argument. State v. Smith, 445 So.2d 521 (La.App. 3 Cir.1984), writ den., 449 So.2d 1346 (La.1984). In the instant case, defense counsel referred to Dr. Shepard's testimony in closing argument, stating:
"Dr. Shepard was here solely because he corroborated the fact of the drug problem that he observed July 7th, he wrote a memo to the worker's comp insurer saying this guy is burning prescriptions like crazy and I'm going to cut him off. That's July 7th. That's after the offense occurred. So I submit to you that you can't simply ignore that evidence. And you can't simply throw out the doctor's testimony."
Defense counsel was referring to the doctor's testimony regarding defendant's drug problem, which drug problem was allegedly directly related to the knee surgery for which the drugs were prescribed. When we consider the totality of defendant's argument attacking the State's case for lack of evidence and the defense of defendant's drug intoxication at the time of commission of the offense with defense counsel's reference to Dr. Shepard's testimony, the State's rebuttal argument regarding Dr. *759 Shepard's testimony does not appear to be beyond the scope of rebuttal.
Even if the comment by the prosecutor was considered improper rebuttal, the court must be thoroughly convinced that the remarks influenced the jury and contributed to the verdict before a case will be reversed on the grounds of improper argument. State v. Barrow, 410 So.2d 1070 (La.1982), cert. den. 459 U.S. 852, 103 S.Ct. 115, 74 L.Ed.2d 101 (1982); State v. Morris, 404 So.2d 1186 (La.1981).
In the instant case, the trial judge clearly instructed the jury that the arguments of counsel were not to be considered as evidence. At the beginning of the closing arguments, the Court also instructed the jury that arguments of counsel were not to be considered as evidence. For these reasons, we do not find that the State's rebuttal argument, even if considered improper, influenced the jury and contributed to the verdict.
We find that the comments by the prosecutor were proper on rebuttal in answer to the defense counsel's closing argument and that the trial judge's instructions to the jury assured that the jury would accept those arguments in the proper prospective. State v. Jenkins, 338 So.2d 276 (La.1976); State v. Wright, 344 So.2d 1014 (La.1977); State v. Strange, 334 So.2d 182 (La.1976).
For these reasons, this assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 2
Defendant argues that the trial court erred in failing to suppress his confession and in reliance upon La.R.S. 15:432 for a presumption of sanity which it relied on to relieve the State of its burden of proof on the voluntariness of his statements.
The applicable part of La.R.S. 15:432 reads:
"A legal presumption relieves him in whose favor it exists from the necessity of any proof; ... that the defendant intended the natural and probable consequence of his act; ... that the defendant is sane and responsible for his actions;..."
Defendant contends that the trial court misapplied the statutory presumption to be used on the substantive trial of an offense with the burden of proof the State must meet in proving the voluntariness of an inculpatory statement. Defendant argues that the trial judge erred in allowing the State to rely on this presumption to meet its burden of proving the voluntariness of defendant's confession.
State v. Ashworth, 554 So.2d 271 (La. App. 3 Cir.1989), writ den., 561 So.2d 113 (La.1990) set forth the law concerning confessions when the defendant's mental condition is in question. As the court noted:
"Before the State may introduce into evidence what purports to be a confession or statement of a defendant, it must first affirmatively show that it was freely and voluntarily given and was not made under the influence of fear, duress, menaces, threats, inducements, or promises. La.C.Cr.P. Art. 703(G); La.R.S. 15:451; State v. Benoit, 440 So.2d 129 (La.1983); State v. Golmon, 536 So.2d 481 (La.App. 1 Cir.1988); State v. Toups, 499 So.2d 1149 (La.App. 5 Cir.1986), writ den., 501 So.2d 772 (La.1987). In addition, if the statement was made during custodial interrogation, the State must prove that the accused was advised of his Miranda rights and intelligently and voluntarily waived those rights. La. Const. Art. 1, § 13 (1974); Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); State v. Coleman, 395 So.2d 704 (La.1981); State v. Toups, supra.
We note that, to meet its burden, the State may rely on the presumption of sanity provided in La.R.S. 15:432. State v. Golmon, supra. Because of this presumption, the defendant has the burden of proving a mental defect which renders him unable to understand his rights and, therefore, incompetent to waive them. State v. Glover, 343 So.2d 118 (La.1976); State v. Golmon, supra. The State is not required to negate a defendant's mental abnormality, but it must prove beyond a reasonable doubt that the confession or statement a defendant gave was voluntary. The defendant must *760 then prove the existence of a mental defect or disorder that prevented his confession or statement from being intelligently and voluntarily made. State v. Glover, supra; State v. Golmon, supra. However, the law is clear that when the issue on appeal is whether an accused's level of intellectual capacity precludes him from effectively understanding the essential nature of his right to remain silent, to have assistance of counsel, and of the consequences of his speech, much discretion is accorded to the trial court's determination. State v. Lefevre, 419 So.2d 862 (La.1982); State v. Coleman, supra; State v. Mire, 492 So.2d 180 (La. App. 3 Cir.1986), writ den., 496 So.2d 347 (La.1986)." State v. Ashworth, 554 So.2d 271, at pages 274, 275 (La.App. 3 Cir.1989), writ den., 561 So.2d 113 (La. 1990).
In the instant case, defendant refers specifically to the following comments made by the trial judge in making his decision to deny defendant's Motion to Suppress:
"The defendantthere is also a presumption that under 15:432, that the defendant is sane and responsible for his actions and that he's intended the natural (inaudible) of his act and the Court will follow the cases of State v. Ashworth, 554 Southern Second, 271, Third Circuit case and the case cited by the Third Circuit of State v. Golmon, G-O-L-M-O-N, 536 Southern Second, 481, which is a First Circuit case, I think the facts in those two (2) cases are very similar to the facts in this case.
And the Court pointed out that it would bethe burden would shift to the defendant to prove a mental defect or that he was unable to understand his rights or that he was incompetent to waive his rights under the presumption that he was competent, under 15:432. This is after the State has proven its burden beyond a reasonable doubt that it was freely and voluntarily made and that it was made after waiving his constitutional rights and without any coercion or threats or inducements."
The trial judge correctly ruled that the State must first prove that the confession was freely and voluntarily made before the burden shifts to defendant to prove a mental defect preventing the confession from being freely and voluntarily given.
Defendant also argues that the State failed to prove defendant's confession was voluntary since he requested counsel, when making the confession, which was denied. The record shows that defendant signed a waiver of rights form. As the trial court noted, the form states that defendant could choose to stop answering questions at anytime and ask for an attorney. Defendant argues that he asked for an attorney but, after listening to the taped statement made by defendant, we find defendant's contention is without merit. The confession was made at 10:43 A.M., shortly after defendant signed the waiver of rights form. At the beginning of the oral tape, the reviewing officer asked defendant if he had been advised of his rights and whether he understood them and defendant responded affirmatively.
As for the contention that the confession was not voluntary because the officer continued to question defendant after he asked for an attorney, it appears from the audio tape that defendant was asking the officer if he thought he should get an attorney to help him go home, whereupon the officer replied, "That's up to you." In the conversation, defendant was concerned about being released to go home and the possibility that an attorney could help him in that respect. However, the officer explained that he would not be going home because he was to be arrested. The officer told defendant that the judge would set bond and that, if defendant could post the required bond, he could be released from jail. Accordingly, we find that the State met its burden of proving that the statement was voluntary.
Defendant further contends that he has met his burden of proving the existence of an impaired mental defect that prevented his confession from being voluntary. Defendant contends that Dr. F.T. Friedberg's testimony supports his argument *761 and cites the following testimony by the clinical psychologist:
"In his confession there weremost of the statements he made were in reference to, `Well, I think this,' and the only statements he often made that he said he was sure of, he contradicted himself. So he obviously was not in a mental state to be clear about what happened in this incident."
Defendant also points out that Dr. Friedberg was of the opinion that defendant was suffering from a substance abuse disorder. However, we note that testimony refers to defendant's visit to Dr. Friedberg on October 17, 1989, some three months after defendant's confession was made. On cross-examination the doctor admitted he did not know what, if any, drugs defendant had taken on July 7, 1989, the day defendant gave his confession.
Defendant cites, as further evidence that he was not capable of giving a voluntary confession, the testimony of Dr. Donald C. Harper, a psychopharmacologist. When asked if it was possible to reach an opinion as to defendant's ability to voluntarily waive his rights and give a statement on July 7, 1989, Dr. Harper said:
"That might depend somewhat on the time of day that was involved. He had indicated to me that on Julythe morning of the July 7th, he had taken seven (7) or eight (8) (50) milligram Demerol and four (4) to six (6) twenty-five (25) milligrams Elavil during ten (10:00) to twelve (12:00) A.M. And certainly for a period of eight (8) to twelve (12) hours, he would be, I think, under major influence of large amounts of those medications. And his ability to comprehend waiving rights, I think, would be in question because of that medication."
Although Dr. Harper's testimony does present some evidence that, if defendant was under the influence of the described medication at the time of giving his statement, he would not have been able to comprehend and waive his rights, the trial court apparently did not believe defendant was under the influence of drugs at the time he made his confession. The officer who obtained the confession testified that defendant indicated that he had not taken any drugs within twelve hours before filling out the waiver of legal rights form even though defendant did tell the officer that he had taken medication for a knee injury. Defendant, himself, indicated on the waiver of legal rights form he signed that he had not taken any medication in the previous twelve hours. The officer testified that defendant never expressed to him any difficulty or inability to understand what he was saying and he thought defendant was lucid. On cross examination, Dr. Harper admitted he thought July 7th was the date that the victim was killed and that he had understood drugs were taken by defendant on the day the victim was killed, which was on June 28th, well over a week prior to defendant giving his confession. The doctor further admitted that the drugs taken by defendant on June 29th would have been unlikely to affect defendant's ability to understand and waive his legal rights on July 7th, the day he gave his confession.
Based on the above evidence, we cannot say that the trial court erred in holding that defendant's confession was voluntarily given. Emotional distress alone is not grounds for rendering a confession inadmissible, unless the distress was so severe that the party confessing was unable to voluntarily do so. State v. Golmon, supra. We find that the trial court was correct in its ruling and that the expert testimony offered by defendant did not establish that defendant was not capable of intelligently and voluntarily waiving his constitutional rights at the time he made his confession.
For these reasons this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER 3
Defendant argues that the jury erred in its verdict because the record provides no evidence of specific intent.
When the issue of sufficiency of the evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most *762 favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State Ex Rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Lewis, 560 So.2d 700 (La.App. 3 Cir.1990), appeal after remand, 578 So.2d 253 (La.App. 3 Cir.1991).
Defendant was convicted of second degree murder. Second degree murder is the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm. La.R.S. 14:30.1.
Specific intent is a state of mind and need not be proven as fact, but rather it may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982).
In the instant case, when the evidence is viewed in a light most favorable to the prosecution, there is sufficient evidence to prove defendant had the specific intent to commit the crime. Defendant admits that he struck the victim once with the iron while inside her apartment. From this admission, it can be reasonably inferred that the multiple wounds found on the victim were inflicted by defendant. That inference can be further made by the fact that the coroner found wounds on the victims hands that were inflicted while she attempted to protect herself from the blows. All that is necessary is that defendant form the specific intent to kill or inflict great bodily harm for an instant when committing the crime. Certainly it is reasonable to presume that hitting someone about the head and neck with a heavy iron evidences a specific intent to inflict great bodily harm.
After viewing the evidence in its entirety, according to the Jackson standard, it is clear that any rational trier of fact could have found beyond a reasonable doubt that defendant had the intent to at least inflict serious bodily harm, and convicted defendant of the second degree murder of Margie Martin.
We find this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER 4
Defendant argues that the verdict cannot be sustained because the State did not rebut the defense of drug intoxication which precluded the presence of specific criminal intent at the time of commission of the murder.
The defense of a drugged condition is provided for in La.R.S. 14:15 which reads in relevant part:
"The fact of an intoxicated or drugged condition of the offender at the time of the commission of the crime is immaterial, except as follows:
* * * * * *
(2) Where the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime, this fact constitutes a defense to a prosecution for that crime."
Defendant's claim of being drugged is an affirmative defense. Therefore, the burden of proof was his in this regard. State v. Lewis, supra; State v. Martinez, 524 So.2d 871 (La.App. 3 Cir. 1988), writ den., 525 So.2d 1047 (La.1988).
Defendant contends the testimony of his medical experts proved the fact that he was in a drugged condition at the time of the commission of the murder. Defendant notes that Dr. Friedberg, after reviewing his medical records, found he was suffering from a substance abuse disorder known as "poly-drug use," a user of more than one drug. Defendant abused alcohol, cocaine, and pain medications. He quotes the doctor's statement: "When you have a combination of drugs and a person with the drug history that he [defendant] hasyou lose your conscience when you have these kinds of drugs."
Defendant relies upon the testimony of Dr. Harper who stated that, based on the information given to him by defendant and his wife about defendant's drug abuse, it would be more likely than not that defendant *763 would have been significantly mentally impaired by the drugs he said he took and that these drugs would significantly interfere with defendant's ability to understand the consequences of his actions. However, Dr. Harper's conclusion was only based on facts given to him by defendant and his wife.
Finally, defendant cites the testimony of Dr. Shepard who testified that he was suspicious that defendant might be abusing his medication.
Although defendant presented some evidence that he was drugged at the time of the crime, the State cast doubt on that testimony. The doctors based their opinions on what defendant told them he was taking at the time of the crime. There were questions raised as to the dosages of drugs defendant told each doctor he was taking at the time of the commission of the crime and the jury was free to accept or reject their expert testimony based on those discrepancies. After reviewing the record in this case, we find that the expert medical testimony offered by defendant failed to meet that burden of proof, therefore, defendant's argument that the State failed to rebut the defense evidence is without merit. Although the State admits that no witnesses were called on its behalf to rebut the testimony of defendant's expert witnesses, none were required. There were no witnesses to defendant's alleged drugged condition and defendant's contentions were based solely on the testimony of experts which the State sufficiently discredited on cross-examination. We will not question the credibility determinations of the jury.
It is the role of the factfinder to weigh the credibility of the witnesses. The appellate court should not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. State v. Lewis, supra.
The doctors' testimony and opinion were based upon information given to them by defendant and his wife and the jury could decide what weight to give the doctors' testimony. Based on the evidence presented, we cannot say that the jury abused its discretion in finding that defendant failed to prove that he was in a drugged condition at the time of the commission of the murder.
Thus, we find this assignment of error also lacks merit.
For the reasons given herein, defendant's conviction and sentence are affirmed.
AFFIRMED.