626 So.2d 890 (1993)
STATE of Louisiana, Plaintiff-Appellee,
v.
Terry Wayne TURNER, Defendant-Appellant.
No. CR93-362.
Court of Appeal of Louisiana, Third Circuit.
November 3, 1993.
*892 Jerold Edward Knoll, Marksville, for State of La.
Dan B. McKay, Jr., Bunkie, for Terry Wayne Turner.
Before STOKER, DOUCET and SAUNDERS, JJ.
DOUCET, Judge.
This is an appeal from a conviction of attempted first degree murder and a sentence of 40 years at hard labor imposed therefor.
On August 14, 1992, Officer Chico Mose of the Cottonport City Police Department stopped Terry Wayne Turner, the defendant herein, for speeding, at about 9:40 p.m. The defendant's brother was his passenger. The defendant did not have his driver's license. The warrants and license check revealed that the defendant was driving under suspension and revocation of his license. The defendant was placed under arrest.
While the officer was handcuffing him, the defendant began to struggle. The defendant and Officer Mose fell on the ground. The defendant grabbed the officer's gun. The defendant pointed the gun at the officer's head and fired a shot. The officer turned away and the bullet glanced off his head and went through his shoulder. The defendant's brother got out of the car and attempted to assist the officer. The defendant took the gun, got in his car, and sped away leaving the wounded officer on the ground.
On September 23, 1992, the defendant was indicted by a grand jury and charged with attempted first degree murder, a violation of La.R.S. 14:27 and La.R.S. 14:30. After a trial by jury on December 7 and 8, 1992, the defendant was found guilty as charged. The defendant's motions for post-verdict judgment of acquittal and for new trial were heard and denied on January 12, 1993, and January 26, 1993, respectively. On January 28, 1993, the defendant was sentenced to *893 serve 40 years at hard labor, to run concurrently with a six month sentence previously imposed for a prior misdemeanor conviction. The defendant objected to the sentence and stated he would assign reasons in his motion for reconsideration and gave notice of appeal. His motion to reconsider sentence was filed on February 27, 1993. It was heard and denied on March 23, 1993. It is from this conviction and sentence that the defendant now appeals.

MOTION FOR NEW TRIAL
The defendant alleges that the trial court erred in denying the defendant's motion for new trial. The defendant did not argue this assignment of error in his brief.
Failure to argue an assignment of error constitutes a waiver of that error. State v. Lewis, 576 So.2d 1106, 1110 (La.App. 3 Cir.), writ denied, 580 So.2d 669 (La.1991). See also Uniform RulesCourts of Appeal Rule 2-12.4. Therefore, the defendant's assignment is deemed abandoned and will not be addressed.

SUFFICIENCY OF THE EVIDENCE
A number of the defendant's assignments of error address the sufficiency of the evidence presented at trial. The defendant alleges that the verdict was improper because it was based on Officer Mose's testimony. The defendant alleges that this testimony included internal contradictions and irreconcilable conflicts with physical evidence. Citing the coroner's testimony regarding possible paths a bullet might take, the defendant argues that the evidence does not sufficiently support the verdict. The defendant also alleges that the verdict is contrary to the law and evidence and that the trial court erred in denying his motion for post verdict judgment of acquittal.
The defendant was charged with attempted first degree murder. La.R.S. 14:30 provides in pertinent part:
A. First degree murder is the killing of a human being:
* * * * * *
(2) When the offender has a specific intent to kill or to inflict great bodily harm upon a fireman or peace officer engaged in the performance of his lawful duties;
La.R.S. 14:27 provides in pertinent part:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
To convict the defendant of attempted first degree murder the State had to prove that he had the specific intent to kill the victim, that the victim was a police officer engaged in the performance of his lawful duties, and that the defendant, having such specific intent, did an act for the purpose of and tending directly toward the accomplishment of the offense intended. State v. Strother 362 So.2d 508 (La.1978); State v. Rubin, 588 So.2d 1289 (La.App. 2 Cir.1991).
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559, at 563 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses. The appellate court should not second guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, supra, citing State v. Richardson, 425 So.2d 1228 (La.1983).
In order for the State to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. Similarly, the test for the granting of a motion for post *894 verdict judgment of acquittal is based on sufficiency of the evidence as stated in Jackson v. Virginia, supra. A post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the State, does not reasonably permit a finding of guilt. La. C.Cr.P. art. 821(B).
Specific intent is a state of mind and can be proven directly as a fact or may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Boyer, 406 So.2d 143 (La.1981); State v. Bessard, 461 So.2d 1201 (La.App. 3 Cir.1984), writ denied, 466 So.2d 467 (La. 1985). In the absence of an admission of such intent by the defendant, it must be proven by inferences from surrounding facts and circumstances. State v. Donahue, 572 So.2d 255 (La.App. 1 Cir.1990). In this case, the defendant made no such admission. As a result, it was necessary that the State prove this element by circumstantial evidence. La. R.S. 15:438, which addresses circumstantial evidence, provides that in order to convict the fact finder, as well as the reviewer on appeal, must find that assuming every fact to be proved that the evidence tends to prove, the evidence excludes every reasonable hypothesis of innocence.
The weight to be accorded to the evidence presented is a question of fact. The resolution of a matter where conflicting testimony exists requires a determination of credibility of the witnesses and is a matter of weight of the evidence and not sufficiency. Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Such a determination rests solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witness. State v. Nolan, 503 So.2d 1186 (La.App. 3 Cir.1987), writ denied, 507 So.2d 226 (La.1987).
Accordingly, under the Jackson methodology a reviewing court is required to view the evidence from the perspective of a hypothetical rational trier of fact in determining whether such an unconstitutional conviction has occurred. In reviewing the evidence, the whole record must be considered because a rational trier of fact would consider all of the evidence, and the actual trier of fact is presumed to have acted rationally until it appears otherwise.5 If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all of the evidence most favorable to the prosecution must be adopted. Thus, irrational decisions to convict will be overturned, rational decisions to convict will be upheld, and the actual fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. (Footnotes omitted)
State v. Mussall, 523 So.2d 1305, 1310 (La. 1988).
The State presented the testimony of several witnesses, including that of the victim, and introduced physical evidence. The victim, Officer Chico Mose, was employed by the Cottonport Police Department at the time of the offense. Officer Mose arrested the defendant on August 12 pursuant to a warrant issued for his non-payment of a fine. On that occasion the defendant had asked to be allowed to go get the money to pay the fine and not be arrested, but the officer would not agree to this. When the defendant began to walk away, Officer Mose put the handcuffs on him. The defendant began to struggle, twisting and trying to jerk away from the officer. As a result, defendant was charged with battery of a police officer.
Officer Mose began his patrol shift at 5:00 p.m. on August 14, 1992. At approximately 9:30 p.m., while patrolling on La. 29 inside the city limits, he clocked the defendant going 13 miles over the speed limit. He stopped the defendant who he recognized as the defendant. He also recognized the defendant's passenger as the defendant's brother.
Officer Mose informed the defendant that he had been stopped for speeding. The defendant had no driver's license. A license check revealed that the defendant's driver's license had been revoked. The defendant had already gotten out of the car when the officer informed him that he was under arrest and why.
*895 The officer instructed the defendant to stand in front of the police unit, turn around and put his hands behind his back, which he did. The officer testified that he grabbed the defendant's right hand by the thumb and cuffed it, and then the defendant turned around to face him. The defendant told Officer Mose the cuff was too tight.
The officer explained that the cuffs would not be loosened unless the defendant turned around and was fully cuffed first, but the defendant did not comply. Instead, the defendant grabbed Officer Mose with his free hand and they began to struggle. Both fell to the ground near the back tire of defendant's car. The defendant ended on top of the officer straddling him. When the defendant tried to bite Officer Mose, Officer Mose let go and fell backwards. The defendant reached for the officer's gun, a .357 Magnum, Officer Mose felt the defendant pulling on the gun. The officer tried to move to stop the defendant from getting the gun but his night stick prevented him from doing so. The officer tried to roll to the left to get away. The weapon ended up facing the defendant and he was able to remove it from the officer's holster. The officer grabbed at the gun but the defendant jerked it away, causing the officer to fall back to the ground. When he looked up, the officer saw the gun pointed at him with the barrel approximately 18 to 24 inches from his face. The officer hollered at the defendant not to shoot, threw his arms over his face, and closed his eyes.
The officer testified that he did not hear the gunshot. He passed out. The next thing he remembered was waking up, laying face down and bleeding. It was later revealed that in addition to having been hit by the bullet, the officer's eardrum in his left ear had been ruptured by the noise of the gun firing.
Chief of Police Gerald Mayeaux, who lived approximately two-tenths of a mile from Front Street, was in his front yard at the time of the incident. He testified that he could see the police unit lights and was listening to the events on his police hand unit. He heard the license check and was attempting to have Officer Mose contacted when he heard the gunshot.
Officer William Smooth was the first to arrive at the scene followed by Chief Mayeaux who was accompanied by Johnny Turner. Officer Mose told Officer Smooth that the defendant shot him.
Dr. L.J. Mayeaux, the Avoyelles Parish Coroner, also testified. He examined Officer Mose on September 4, 1992, because his wounds had become infected. After the officer's case history and observing the wounds, the doctor concluded that had the officer not turned his head, the shot would have been fatal.
The defendant testified that he was not speeding when he was stopped by Officer Mose. He stated that after his arrest, Officer Mose placed one cuff on his right hand and that it was "sort of tight" and that he requested the officer loosen it. He testified that the officer said he'd loosen the cuffs when they got back "to the Parish." The defendant stated that the officer then pushed him back and when he got up the officer pushed him down. The defendant testified that when he came back up, Officer Mose grabbed his gun out of the holster. The defendant claims that he grabbed the gun, spun around and both he and the officer fell to the ground. The defendant testified that as they hit the ground, the gun discharged and that at the time of the discharge the gun was approximately "a foot before his head," referring to the officer. The defendant stated that he grabbed the gun and fled because he feared for his life. The defendant's brother did not testify at the trial.
On appeal the defendant argues that the testimony of Dr. Mayeaux on the bullet's possible trajectory established sufficient reasonable doubt pertaining to two of the elements, that of specific intent to kill, and commission of an overt act in furtherance of that purpose. The defendant argues that he is entitled to a reversal of his conviction. He argues that at a minimum, he could be convicted only of a lesser included offense.
The testimony of Dr. Mayeaux and the physical evidence do not contradict or irreconcilably conflict with the testimony of Officer Mose. Rather, the doctor stated that "in looking at the wounds, the width of the *896 wound, and the trajectory, the angulation of it, is consistent with Mr. Mose's statement...." He stated that the wound would have been fatal if the officer had not moved. Although the doctor admitted that by looking at Officer Mose's wounds near the shoulder and elbow alone it was just as likely that one end was the entry and the other the exit, the fact that the head wound was significantly narrower indicated this was the first wound, due to the fact that a bullet expands with the passage of time from firing.
On cross-examination the doctor agreed that hypothetically it was possible for a bullet to follow a path such that the officer's arm would have been injured first and then his head. However, he explained that a different caliber weapon would be required to cause the one inch wide wound in the arm if it were the first wound. This wound was significantly wider than the bullet casing for the ammunition used in this particular instance.
The State presented evidence to prove that Officer Mose was a peace officer engaged in the performance of his lawful duties at the time of the incident. The State presented evidence which established that the defendant took the officer's .357 Magnum revolver and pointed it at the officer's face at point blank range, 18 to 24 inches away. The State also presented evidence that the defendant fired the weapon once and that this shot would have been fatal if the officer had not moved. The jury, as the trier of fact, was free to find the State's witnesses more credible than the defendant. The decision of the jury to convict in this case was not irrational.
The State presented sufficient evidence for a reasonable fact finder to find the State had proven beyond a reasonable doubt that the defendant had the intent to kill and committed an act in furtherance of this purpose. Additionally, this evidence was sufficient to support the jury's exclusion of the hypothesis that the gun went off accidentally during the scuffle.

"BRADY" NOTIFICATION
The defendant alleges that the State violated his rights under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and Giglio v. U.S., 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), in failing to notify his counsel of, and/or provide a copy of, the transcribed statement of the defendant's brother, which he alleged was favorable to him. The statement was taken immediately after the incident and the defendant contends the statement contradicted the officer's testimony. The failure of the State to provide a copy of the statement was the basis for the defendant's request for a new trial. In denying the motion the trial judge stated that, after reviewing the statement in question, he found no inconsistency between this statement and Officer Mose's testimony, nor did he find the statement exculpatory and would have ruled so pretrial if the issue had been raised.
This court in State v. Lewis, 560 So.2d 700, 704 (La.App. 3 Cir.1990), after remand, 578 So.2d 253 (La.App. 3 Cir.1991), stated that:
La.C.Cr.P. art. 723 provides that the state is under no obligation to provide statements of witnesses to the defense unless the statements were made by the defendant himself. However, a defendant may not be denied exculpatory statements made by a witness other than the defendant provided the statement is material and relevant to the issue of guilt or punishment. State v. Ates, 418 So.2d 1326 (La.1982); State v. Landry, 381 So.2d 462 (La.1980). Where a specific request is made for such information and the subject matter of such a request is material, or if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the information to the trial judge. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). However, such a request must be specific and relevant. State v. Davenport, 399 So.2d 201 (La. 1981).
The court explained further however, that the mere existence in the statements of exculpatory information did not constitute a denial of the defendant's rights under Brady v. Maryland, supra. There must also be a finding that the evidence was material to the *897 guilt or punishment of the defendant, so that he was denied a fair trial by its inaccessibility. State v. Davenport, supra.
An adequately specific request was made by the defendant in his motion for discovery. He requested copies of any favorable or exulpatory material relevant to the issue of his guilt or punishment including statements, whether made by a "victim, codefendant, former codefendant, arrestee or witness."... and "for all Brady and Giglio material." However, the State did admit the possession of a statement by Johnny Turner. In its answer to the defendant's motion for discovery the State refers to "attachments" to the answer. The attachments include an investigation report of this crime. The third page of the report contained a listing of civilian witnesses' statements and interviews and lists Johnny Turner as number five. So, although the requested copy was not supplied, the defendant was given notice of the existence of the statement. The question remains whether the statement by the defendant's brother, Johnny Turner, was favorable or exculpatory material relevant to the defendant's guilt or punishment.
The defendant argues that Johnny Turner's statement to the police clearly established that Johnny's remarks during the incident, urging the defendant not to do what he was doing, referred to the scuffling and not to the defendant holding the gun and pointing it at the officer. The argument is based on Johnny's statement that he did not see the gun until the defendant took off after the shot. He further argues that this version contradicts the testimony of the officer and is therefore exculpatory because allegedly the officer's testimony indicated Johnny's remarks to stop were referring to an effort on the part of the defendant to shoot the defendant.
A review of Officer Mose's testimony reveals that the complained of statements occur between two other disjointed accounts of the incident by the officer. Each one concentrates on different aspects of the incident. Nothing in the record indicates that Johnny's statements were made at the instant that the defendant was holding the gun in front of the officer's face. The testimony indicates the statements were made some time prior to the shooting. Nor did the closing statement by the State characterize the officer's testimony as such.
Accordingly, the statement of Johnny Turner was neither favorable nor exculpatory material, relevant to the defendant's guilt or punishment. The statement did not tend to prove that anything the officer testified to was incorrect or to negate proof of any element of the crime. As a result it cannot be said that the defendant was denied a fair trial due to the statement's alleged inaccessibility.

DEMONSTRATION EVIDENCE
The defendant alleges that his right to an appeal based upon a complete record of the proceedings was denied by the use of demonstrations during the presentation of the State's case, in which the alleged victim purported to demonstrate for the jury how the crime was committed, such demonstrations being unrecorded and not otherwise made susceptible to appellate review. The defendant argues that it was not necessary for him to move for recordation or to enter contemporaneous objections to the failure to record the missing portions, citing State v. LeBlanc, 367 So.2d 335 (La.1979), as his authority.
The LeBlanc case addressed whether an accused in a misdemeanor case should have to make a motion before a recording of the proceeding is made. Citing La. Const. Art. 1 § 19, the court held that La.C.Cr.P. art. 843, which required such a motion by one of either the court, the State, or the defendant before making a recording, unconstitutional in this respect.
In this case, the trial was recorded, transcribed, and makes up a part of the record on appeal. The defendant had ample opportunity to have a clearer record of the proceeding made. He could have objected at the indication of any demonstration and demanded a verbal explanation of each for the record. He could have covered these demonstrations verbally on cross examination. Finally, if he felt it was necessary he could have motioned the court to request video taping of the demonstrations given.
*898 Trials and their appeals predate the existence of stenographic or audio recordings. Demonstrations which are relevant have always been allowed at trials. It is well settled, only that which is in the record may be reviewed by the court on appeal. State v. Oubichon, 422 So.2d 1140 (La.1982). Therefore, if the defendant felt the demonstrations would not be adequately recorded at trial it was his duty to cause a more precise recording to be made. The defendant not only failed to object to the use or method of recordation of demonstrations at trial, but he used demonstrations in presenting his own case.
The trial transcript provides a fair and constitutionally complete basis for review of this case. The testimony in the transcript allows the court to clearly follow the case as presented at trial. The defendant's failure to object at trial waived any insufficiencies in the recordation.

IMPROPER CLOSING ARGUMENT
The defendant alleges that the trial court erred in permitting the State to make a "rebuttal" closing argument that went far beyond responding to the defendant's closing argument and that the State's argument on rebuttal constituted prejudicial error by stating that the defense should have called the defendant's brother, Johnny Turner, as a witness. Additionally, he alleges that the court erred in denying his motion for mistrial during the closing rebuttal argument after the district attorney referred to the defendant's prior convictions as proving that the defendant had no respect for the law, in violation of the rule that the introduction of the defendant's prior criminal record may be done solely to impeach his credibility.
The proper scope of argument at trial is addressed in La.C.Cr.P. art. 774 which provides that:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
Great latitude is allowed in closing arguments, State v. Thomas, 598 So.2d 639 (La. App. 3 Cir.), writ denied, 604 So.2d 965 (La. 1992). Even if a comment by the prosecutor is considered improper rebuttal, the court must be thoroughly convinced that remarks influenced the jury and contributed to the verdict before a case will be reversed on the grounds of improper argument. State v. Barrow, 410 So.2d 1070 (La.1982), cert. denied, 459 U.S. 852, 103 S.Ct. 115, 74 L.Ed.2d 101 (1982); State v. Castille, 590 So.2d 755 (La.App. 3 Cir.1991), writ denied, 597 So.2d 1025 (La.1992).
In his brief the defendant complains of the remarks by the State regarding the weapon used in the crime, a .357 Magnum. The defendant argues that because he did not mention it in his closing that it was improperly referenced in rebuttal. Additionally, the defendant alleges the record contains no evidence concerning the gun. To the contrary, Officer Mose described his gun in his trial testimony. The only question remaining is whether its mention during rebuttal was so prejudicial as to constitute reversible error. In light of all the evidence presented at the trial and the fact that the jury was instructed by the court before commencement of the trial and prior to the jury's deliberation that the statements and arguments of the attorneys are not evidence and should not be considered as such, we cannot say that the remark prejudiced the jury.
The defendant also argues that the State's remark regarding the defense's failure to call Johnny Turner as a witness, was an unlawful attempt to switch the burden of proof to the defendant at a time when the defendant is unable to respond. The State referred to the lack of testimony by Johnny Turner three times during rebuttal. The State first called the jury's attention to the fact that the defendant did not have his brother corroborate his testimony that when Officer Mose stopped him the defendant was not speeding. No objection was made to this statement. Quite a bit later the State twice referred to the absence of testimony by *899 Johnny Turner to corroborate the defendant's version of the shooting. Only after the State made the third reference to Johnny Turner's failure to testify did the defendant object.
A similar situation existed in the case of State v. Taylor, 533 So.2d 94 (La.App. 4 Cir.1988). The defendant in Taylor was convicted as charged of attempted second degree murder for shooting his victim. During trial it was revealed that the shooting took place at the defendant's girlfriend's house while she and her children were present. During closing argument and again in rebuttal the State noted that the children did not testify. During rebuttal the State noted that the girlfriend who did testify was actually in another room at the time of the shooting. In dicta the court noted that such statements were proper and held that any right to object had been waived, stating as follows:
Both of these remarks by the prosecutor were merely restatements of the evidence presented at trial and, therefore, were proper. Further, because no objection was made at the time these statements were made, the defendant waived his right to object later. LSA-C.Cr.P. art. 841. Id. at 97.
The remarks of the prosecutor in this case merely restated the evidence presented at trial and therefore, were proper. State v. Taylor, supra. The jury had been instructed to not regard these arguments as evidence. Therefore, the remarks did not contribute to the verdict so that reversal is required.
Finally, the defendant argues that the trial court erred in denying his motion for a mistrial. This motion was prompted by the State's reference to the defendant's prior convictions and the statement which followed:
"He had no respect for law enforcement people whatsoever."
Examination of the record reveals that the defense counsel stated in closing argument that:
"Terry Turner is not a perfect individual by any means. He's cross wise with police officers; has been for most of his life ... just consider the possibility that, perhaps, the police officers have been hard on him."
Later in the argument defense counsel stated that:
"The police officers have not been totally `lily white' in their relationship with Terry Turner, either ..."
and that the prosecution of the case was motivated by pressure from the police.
The prosecution is permitted to answer the argument of the defendant. La.C.Cr.P. art. 774. Therefore, the prosecutor's rebuttal to the defendant's argument was proper. State v. Robertson, 511 So.2d 1237 (La.App. 2 Cir. 1987), writ denied, 516 So.2d 366 (La.1988). It should also be noted that the defendant himself admitted during his testimony that he had defied the authority of people in uniform. The trial court did not err in denying the motion for a mistrial.

SENTENCING
Several of defendant's assignments of error address alleged sentencing problems. The defendant alleged that the trial court erred in sentencing the defendant to a term of 40 years at hard labor, in making an upward departure from the sentencing guidelines and in refusing to grant a downward departure from the sentencing guidelines in this case.
In State v. Sepulvado, 367 So.2d 762 (La. 1979), the Supreme Court determined that Art. 1, § 20 of the Louisiana Constitution of 1974 authorized appellate review of individual sentences for excessiveness. The court in Sepulvado, supra, found that old La.C.Cr.P. art. 894.1 (1977) provided the criteria to measure whether a sentence within statutory limits is excessive, either by reason of its length or because it specifies confinement rather than less onerous sentencing alternatives.
The jurisprudence clearly indicates that to find that a sentence is excessive this court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and, therefore, is nothing more than needless imposition of pain and suffering. State v. Campbell, 404 *900 So.2d 1205 (La.1981); State v. Everett, 530 So.2d 615 (La.App. 3 Cir.1988), writ denied, 536 So.2d 1233 (La.1989). The trial judge is given wide discretion in imposing a sentence, and a sentence imposed within statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. State v. Howard, 414 So.2d 1210, 1217 (La.1982).
This court will use the new sentencing guidelines as an aid in determining whether the sentence imposed in this case is constitutionally excessive. The designated sentence range provided in the grid is appropriate in cases without aggravating or mitigating circumstances. La.S.G. § 209(A)(1). To arrive at the designated sentencing range through use of the sentencing guidelines it is necessary to determine the appropriate grid cell. The grid cell is determined by the seriousness level of the offense and the criminal history index of the offender.
The offense of attempted first degree murder has a seriousness level of "1." The defendant's criminal history includes a felony conviction for aggravated battery which translated into three points. Since the defendant's present and prior felony convictions were both in the "PERSON" crime family, an extra half point was added. The defendant had an extensive record of misdemeanor convictions. Each misdemeanor added a quarter point. However, the total points in this category may not exceed one point. Therefore, one point was added to defendant's criminal history points which totaled four and one-half. This translated to a criminal history classification of B. Therefore, the appropriate felony sentencing guidelines grid cell was "B-1" which required incarceration and suggested a minimum term of 270 months (22.5 years) and a maximum term of 300 months (25 years).
The trial judge sentenced the defendant to 40 years at hard labor, to run concurrently with a six month sentence previously imposed. The judge acknowledged that the sentence did not fall within the recommended sentencing guideline grid cell. He gave reasons for the departure as required by La. S.G. § 209(A)(4). The first reason cited by the judge was that the same seriousness level was recommended for both first and second degree murder. Stating that he felt that attempted first degree murder in general was more serious and that since in this case it was perpetrated against an officer engaged in the performance of his lawful duties, a stiffer penalty was appropriate.
The judge also noted that the defendant was in custody pursuant to La.C.Cr.P. art. 201 at the time he committed the crime, though not pursuant to La.S.G. § 205(B)(3), and that it would not have already been factored into the criminal history index.
The judge also noted the defendant's use of a dangerous weapon in the commission of the crime, an aggravating circumstance pursuant to La.S.G. § 209(B)(10), as well as the defendant's commission of similar offenses not already considered, an aggravating circumstance pursuant to La.S.G. 209(B)(12). The judge noted in particular the defendant's two convictions for simple battery, four convictions for resisting an officer and eight convictions for battery of a police officer.
In the present case the statutory sentencing provisions are found in La.R.S. 14:27 and La.R.S. 14:30, which when read together mandate a sentence of imprisonment at hard labor for not more than 50 years.
Considering the judge's reasons for sentencing the defendant and the fact that this sentence is ten years less than the maximum sentence allowed, the trial judge did not abuse his sentencing discretion. Additionally, in prior cases, 40 year sentences at hard labor were found to not be excessive in cases where, unlike the present, the defendants had no violent criminal history. State v. Laird, 572 So.2d 793 (La.App. 4 Cir.1990); State v. Argo, 476 So.2d 409 (La.App. 2 Cir. 1985), writ denied, 481 So.2d 1347 (La.1986).
To support his argument that the trial judge should have granted his request for a downward departure from the sentencing guidelines the defendant alleged that the arrest was an illegal one, and thus the crime he committed thereunder was done under "duress, coercion, threat or compulsion," that it was committed without significant premeditation, and that he exhibited caution or sincere concern for the victim by firing only one *901 shot. The only evidence presented to support the defendant's claim of an illegal arrest was his own testimony that he was not speeding and should not have been stopped. In light of the verdict, the jury must have chosen to believe the officer's testimony. Therefore, the defendant's argument that an illegal arrest occurred is without any merit. The fact that the defendant did not choose to shoot the officer until after the arrest or that a single shot was fired were not mitigating circumstances, especially in light of the coroner's testimony that the single shot fired would have been fatal had the officer not moved. The sentence imposed was properly within the judge's discretion.
For these reasons the conviction and sentence are affirmed.
AFFIRMED.