_Ji_MeKAY, Judge.

STATEMENT OF THE CASE

On February 3, 1994, the defendants, Shawn Smith and Kendrick Howard, were indicted for the first degree murder of Chester Leobia in violation of La. R.S. 14:30. Defendant Smith entered a plea of not guilty at his arraignment on March 30, 1994. Defendant Howard pled not guilty at his arraignment on September 9, 1994. On November 3, 1994, the defendants filed suppression and discovery motions. On May 15, 1996, after a three day jury trial, the defendants were found guilty as charged. After the penalty phase on May 16, 1996, the jury returned a sentence of life imprisonment at hard labor without benefit of probation, parole or suspension of sentence as to both defendants. On May 30, 1996, defendant Howard filed a motion for new trial. On August 8, 1996, defendant Howard filed a motion for a post judgment verdict of acquittal. The trial court denied the defen *1211 dant’s motions on August 20, 1996. Defendant Smith waived all delays. The trial court sentenced defendants to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Defendants’ motions for appeal were granted and a return date of October 20, 1996, was set.
The appeal record was lodged in this court on January 23, 1997. Defendant Howard filed his brief on March 5, 1997. Howard also filed a supplemental brief on June 2, 1997. Defendant Smith filed his brief on June 24, 1997. The state filed its brief on August 4, 1997. Defendant Howard filed pa reply brief on August 13,1997.

STATEMENT OF THE FACTS

Joseph Anderson and the victim, Chester Leobia, III, grew up together and were friends. Sometime in November of 1993, Anderson and Leobia went to Club Rumours, which is located on St. Claude Avenue. Leo-bia met a young woman named Danisha at the club that evening. On the same evening, Anderson met a young woman who was with the defendant Smith. Anderson has known defendant Smith and defendant Howard since high school. On November 30, 1993, Anderson picked up Leobia from his father’s house, and the two men went to meet Dani-sha in the Iberville housing project. The two men met Danisha in Krauss Ltd.’s parking lot. While they were talking, Danisha’s pager went off. She had to pick up a friend and her baby. Danisha asked if they wanted to follow her and then go to her house. Anderson and Leobia agreed to follow Dani-sha to her house. On the way, Anderson and Leobia got lost. As they were pulling out of a driveway, three or four subjects began shooting at the vehicle. Anderson heard Leobia say “Oh man” and knew he was shot. The perpetrators shot through the windows. Smith shot Anderson in the left arm. Smith then opened the driver side door and pulled Anderson from the vehicle. Howard hit Anderson in the head with a weapon and then put Anderson in the trunk. The defendants then drove the car for a short time while Anderson was in the trunk. When they stopped, Anderson was taken out of the trunk and placed by the vehicle. The perpetrators then attempted to take the stereo out of the ear. When they heard the police, they fled. Anderson told Detective Ross Mocklin[1] that Smith and Howard were the perpetrators. He told the officer that Smith shot him in the arm and Howard hit him on the 13head with a gun. Anderson was able to identify Smith although he wore a mask. Anderson testified the mask was too big and he could see Smith’s face. Anderson identified Smith in a photographic lineup. At trial, he identified both defendants as the perpetrators.
Danisha Jackson testified she met the victim at Club Rumours and exchanged phone numbers. On November 30,1993, the victim called and asked if he could see her. She agreed, and they met at 3909 Iberville Street. They stayed there for approximately twenty-five minutes. She then left to pick up her friend and child. The victim and Anderson followed her to her friend’s house on Conti Street. They were supposed to follow her to her house on the west bank. However, she lost sight of the victim and Anderson after she left her friend’s house. She circled the project two times and then walked to the courtyard. As she was leaving the project, she saw the police. She called Anderson’s beeper from a friend’s house. Anderson told her someone killed Leobia.
Patrice Morris testified that Danisha picked her up from a friend’s house on Conti Street on November 30,1993. Anderson and Leobia were following Danisha. As Danisha pulled out of the driveway, Patrice saw three men, with ski masks and guns, coming towards them. After Danisha realized she had lost sight of Anderson and Leobia, Patrice told Danisha about the three masked men. Danisha drove around the project and finally saw Anderson’s car. They went to a friend’s house, and Danisha called Anderson on his beeper. Danisha returned to the scene where she spoke with the police officers. Patrice has known both defendants since childhood.
*1212 At approximately 11:30 p.m. on November 30, 1993, New Orleans Police Officers John Ray and Joel Sills were on routine patrol in the 1300 block of Conti Street when they saw a white Oldsmobile Ninety-eight in a driveway. _j4When they approached the vehicle, they observed one man slumped over the front seat on the passenger side and another man sitting next to the vehicle. Both men appeared to have been shot. The officers then called the police dispatcher.
Officer David Adams responded to the call from Officers Ray and Sills. The officer checked on the victims. The officer could not detect any signs of life on the victim in the vehicle. The officer observed that the other victim, Anderson, had a busted mouth and a gunshot wound to the arm. Anderson was transported to Charity Hospital by the EMS unit. Officer Adams secured the scene until the homicide detectives arrived.
Ms. Ernestine Delone, Howard’s mother, stated that Howard lived with his girlfriend on Conti Street.
Frank Oliver was a New Orleans Police officer in November of 1993. On November 30, 1993, he responded to a call of a shooting in the 1300 block of Conti Street. Oliver observed that one person was dead and the other had been shot. Anderson, the subject who had been shot, told the officer that the perpetrators wore masks, and he could not identify the perpetrators. Oliver did not write a report or assist with the investigation.
Dr. Thomas Carson, a forensic pathologist, performed an autopsy on the victim, Chester Leobia, III. The victim died from multiple gunshot wounds to his legs and back.
New Orleans Police Officer Pete Cuardra-do of the Crime Lab processed the crime scene. On the scene, he found a soft pool stick case, a car stereo amplifier, a pool ease, a black stereo speaker, a pair of white tennis shoes, a Columbia House Video Club membership card in the name of Percy Dominie, one spent copper jacket, and two bullets (one from on top of the victim’s groin area and one from the driver side of the vehicle). The officer also took blood ^samples from the vehicle’s passenger seat and trunk. One partial fingerprint was obtained from the rear door window. Officer Timothy M. Seuse-neau, a forensic light examiner, examined the evidence obtained at the scene for fingerprints. Five partial prints were found on the stereo speaker. Officer Glen Burmaster of the Latent Fingerprint Section testified that he was not able to match any of the fingerprints.
Officer John Treadway, a firearms examiner, examined the bullets retrieved from the victim’s body, Anderson’s arm and the vehicle. The bullets were determined to be nine millimeter which were fired from a common weapon. Two lead core bullets, one retrieved during Leobia’s autopsy and the other found in the vehicle, were not able to be identified.
Officer John Mitchell arrested Shawn Smith on December 1,1993 at approximately 7:35 p.m. in the 200 block of North Claiborne. Defendant Kendrick Howard was arrested by Officer William Trepanier on August 16, 1994.
Roxanne Martin, Smith’s sister, testified that Smith was at her house on November 30, 1993 from 11:30 p.m. to 11:50 p.m. She was having a birthday party for a friend, Bishop Butler. The party began at 8:30 p.m. Defendant Smith arrived at the party around 11:00 p.m. He was with his girlfriend and baby. Martin stated Smith stayed at her house until midnight and then he drove Bishop Butler home.
Lynn Brooks, Smith’s ex-girlfriend and mother of Smith’s child, testified Smith arrived at her house at approximately 10:30 p.m. on November 30,1993. They picked up their daughter from Brooks’ mother’s house and then went to the party at Roxanne Martin’s house.
Bishop Lucian Butler, pastor of the St. Raymond Divine Temple of Delivérance, has known Smith’s family for fifteen years. Butler stated Smith |6arrived at the birthday party at approximately 11:00 p.m. Butler left with the defendant after midnight. The defendant took him home.
Ms. Marguerite Gordon resided at 2406 Conti Street in November of 1993. She heard the gunshots on November 30, 1993, and went outside after the police arrived. She heard Anderson tell the officers that *1213 some guys tried to take his ear. Anderson said that he could not identify the perpetrators. The witness acknowledged she knew both defendants and had dated Howard.
Dixie Dupree testified that defendant Howard came to her house to see his daughter on November 30, 1998. Ms. Dupree is the child’s godmother. Howard arrived at her house at approximately 10:05 p.m. and stayed until 12:05 p.m when he left with Patrice, the child’s mother.

Smith’s Assignment of Error No.l

In this assignment, Smith argues the state failed to produce sufficient evidence to prove, beyond a reasonable doubt, his identity as one of the perpetrators. Smith contends that Anderson was unable to identify him as one of the perpetrators.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La.R.S. 15:438. La.R.S. 15:438 is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, supra.
In the present case, Anderson testified that although Smith was wearing a mask, he was able to identify Smith as one of the perpetrators. Anderson stated at trial that he could see Smith’s face clearly because the mask was too big. Anderson was able to identify Smith because he knew Smith before the incident. When Homicide Detective Ross Mocklin arrived at the crime scene, Anderson told Mocklin that Smith and Howard were two of the perpetrators. Anderson also informed the officer that Smith had shot him in the arm and Howard hit him in the head and put him in the trunk.
At trial, the defendant offered testimony that Anderson stated, immediately after the incident, that he could not identify the perpetrators. Former New Orleans Police officer Frank Oliver testified Anderson told him the perpetrators wore masks and Anderson could not identify the perpetrators. However, Oliver did not write a report or assist with the investigation. Ms. Marguerite Gordon, who resided at 2406 Conti Street, stated she heard the gunshots on November 30, 1993, and went outside after the police arrived. She heard Anderson tell the officers that some guys tried to take his car. Anderson said that he could not identify the perpetrators. The witness acknowledged she knew both defendants and had dated Howard.
The defendant also produced alibi testimony that he was at his sister’s house on the evening of November 30, 1993. Roxanne Martin, defendant’s ftsister, Lynn Brooks, defendant’s ex-girlfriend, and Bishop Lueien Butler testified the defendant was at Martin’s house from 11:00 p.m. until midnight.
The jury was presented with conflicting testimony concerning Anderson’s ability to identify Smith as one of the perpetrators. It was within the jury’s discretion to choose to accept Anderson’s testimony over the testimony of the defendant’s witnesses. Credibility determinations, as well as the weight to be attributed to the evidence, are soundly within the province of the jury’s trial function. State v. Brumfield, 93-2404 (La.App. 4th Cir.6/15/94), 639 So.2d 312. As the jury accepted Anderson’s identification of Smith was one of the perpetrators who killed Leo-bia, the state produced sufficient evidence to sustain the defendant’s conviction.
This assignment is without merit.

Howard’s Assignment of Error No.l

Defendant Howard argues that the state failed to produce sufficient evidence to *1214 sustain his conviction for first degree murder. Howard contends the evidence fails to support the state’s argument that he was a principal in Leobia’s murder.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 3721 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La.R.S. 15:438. La.R.S. 15:438 is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, supra.
La. R.S. 14:30 defines first degree murder as the “killing of a human being ... when the offender has specific intent to Mil or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of ... armed robbery ... [or][w]hen the offender has a specific intent to kill or to inflict great bodily harm upon more than one person.” Specific criminal intent “is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow Ms act or failure to act.” La. R.S. 14:10. Specific intent is a state of mind and, as such, need not be proven as a fact but may be inferred from the circumstances of the situation and the actions of the defendant. State v. Brooks, 505 So.2d 714 (La.1987), cert. denied, Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987); State v. Holmes, 388 So.2d 722 (La.1980).
A principal is defined as one who is “concerned in the commission of a crime, whether present or absent, and whether [he] ... directly commit[s] the act constituting the offense, aid[s] and abet[s] in its commission, or directly or indirectly counsels] or proeure[s] another to commit the crime.” La. R.S. 14:24. Not all principals are automatically guilty of the same grade of offense. One who aids and abets in the commission of a crime may be charged and convicted with a higher or lower degree of the crime, depending upon the mental element proved at trial. Thus, an individual may only be convicted as a | loprincipal for those crimes for wMch he has the requisite mental state. State v. Brooks; State v. Holmes.
Anderson, the only eyewitness to the shooting, testified that Howard was one of the perpetrators who shot at Leobia and himself. Anderson stated that all of the perpetrators had weapons and fired at Leo-bia and himself. He could not say whether Howard was the person who actually killed Leobia. However, Anderson stated that Howard hit him in the head with a weapon and then put him in the trunk. Anderson further testified that while he was in the trunk, the perpetrators drove the vehicle a short distance. Anderson was then taken out of the trunk. Smith and Howard, along with the other perpetrators, began to take the stereo equipment out of the car. The defendants fled before the police arrived.
Defendant Howard argues that since Anderson could not specifically testify that Howard shot Leobia, there was not sufficient evidence to support Ms conviction for first degree murder. However, Anderson’s testimony revealed that Howard, in addition to the other perpetrators, randomly shot at the vehicle and the victims, killing Leobia and injuring Anderson. Anderson’s testimony was sufficient for the jury to infer that Howard had the specific intent to kill or inflict great bodily harm. Concluding that Howard had the specific mtent to kill or to inflict great bodily harm, the jury could find that Howard was a principal in Leobia’s murder.
Howard also relies upon the firearms analysis which indicated that the bullet taken from Anderson’s arm and the bullets re *1215 trieved during the autopsy on Leobia were fired from the same weapon. Howard contends that since Anderson testified Smith shot him in the arm, then Smith was the person who actually shot Leobia. However, Officer Treadway, the firearms examiner, stated that a lead core bullet was retrieved during the autopsy was not suitable lufor examination and identification. Thus, the evidence indicates that Leobia was possibly shot with two different weapons.
Accordingly, the state produced sufficient evidence to sustain Howard’s conviction for first degree murder.
This assignment is without merit.'

Howard’s Assignment of Error No.2

Defendant Howard further contends the trial court erred when it allowed the prosecutor to misstate the facts during rebuttal argument. He suggests that the misstatement of the facts constituted improper and prejudicial argument. According to the defendant, the prosecutor incorrectly summarized Anderson’s testimony that Anderson identified Howard as the person who killed Chester Leobia. We disagree. After a careful review of the trial transcript, the trial court on six different occasions instructed the jury that they were the judges of fact and that statements made by both sides were merely opinion. This was an adequate remedy for any misstatements heard by the jury.
THE COURT
Again ladies and gentleman, you are the judges as to what has been testified to. And any questions that implies testimony is to be disregarded. Any objection that applies to any testimony is to be disregarded. You are the judge of facts; no one else. You remember what has been testified during the course of trial.
THE COURT
You’re assuming what he’s answered. I’m going to let the jury decide what he answered.
THE COURT
Counsel, I’m going to let the jury decide what he testified to ...
THE COURT
Overrule it, overruled. You are the judges to what has been testified to, and I am going to let counsel express his opinion as to what has been testified to. But remember it is nothing more than opinion. You are 112the judges.
THE COURT
Overrule it. With the admonishment that you are the judges of it. This is only an opinion of counsel.
THE COURT
All right; just a minute. You have already had your opportunity to address the jury through Mr. Larre’. Overrule it. You are the judges of it.
Additionally, the trial Judge in his jury charges, prior to deliberations, instructed the jury that:
... opening statements are not statements ... same with regard to his closing arguments.
... closing arguments are not evidence. I’ve given wide latitude to both in closing arguments. But I’ve done that with admonitions that you are not to consider arguments as evidence. They give counsel an opportunity to ' express to you what they believe has been proven ... As opinion, and that’s all it is, is an opinion.
Now, if you found counsel made statements in opening statements or closing statements not corroborated by the evidence, disregard those statements. They are not evidence. They do not prove anything.
Again; facts are to be determined by you from the sworn testimony of witnesses and exhibits which I have permitted you to view.
A prosecutor’s misstatement of the law during the voir dire, or in his opening and closing remarks, do not necessarily require the reversal of a defendant’s conviction if the trial court properly instructed the jury at the close of the case. State v. Monroe, 626 So.2d 898, 400 (La.App. 4th Cir.1993), writ denied 93-2830 (La.2/4/94), 633 So.2d 168. Monroe, addressed the issue of misstatement of the law by the prosecution in both voir dire and closing, as to the issue of specific intent. Although the ease at bar had misstatements by the prosecution of witness testimony, as opposed to the misstatement of law as in Monroe, it is clear that the trial judge ad *1216 monished and instructed the jury concerning the alleged misstatements by the prosecution. In the case at bar, l^the trial Judge contemporaneously with the defense’s objections throughout the trial and prior to deliberation, instructed the jury that they were the judge of what had been said, and that argument was not evidence but merely opinion. The trial judge adequately remedied this problem in his admonitions and instructions to the jury. This assignment is without error.
Furthermore, a review of the trial transcript reveals that the state’s argument discusses the concept of principals. The prosecutor’s next statement to the jury explained the state’s theory that both Howard and Smith were principals in Leobia’s murder.
MR. DANIELS:
Ladies and gentlemen, this is not a one-man operation. That’s why the law of principles are involved. They were two men, three men, four men; he is not sure how many. I don’t care, five weapons into a car, because only one weapon caused the death of Chester Loebia (sic); and only one weapon was used to shoot Joseph Anderson does not mean that the other is not equally responsible, and does not have the equal intent to rob them, did not have the equal intent to kill them.
Mr. Anderson had said, these are the men who have killed Chester Loebia (sic).
(Trial transcript, 5/15/96, p. 177).
La.C.Cr.P. art. 774 provides that “argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the State or defendant may draw therefrom, and to the law applicable to the case.” The state’s argument was clearly within the limits established by article 774. The state used Anderson’s testimony to argue the law of principals to the jury. Anderson testified that Howard and Smith were two of the perpetrators who shot at him and Leobia. The evidence presented by the state indicates that while Howard may not have been the person who actually caused Leobia’s death, he was a willing participant and principal in the murder. Thus, the state did not misstate Anderson’s testimony during its rebuttal argument.
| uThis assignment is without merit.
Accordingly, the convictions and sentences of defendants Shawn Smith and Kendrick Howard are hereby affirmed.
AFFIRMED.
PLOTKIN, J., concurs in part and dissents in part with reasons.

. Detective Ross Mocklin was the Homicide officer in charge of the murder investigation. Mocklin died prior to trial in 1996.